GARY M. RESTAINO
United States Attorney
District of Arizona
JOSEPH F. BOZDECH
Assistant United States Attorney
California State Bar No. 303453
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Email: joseph.bozdech@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>212883.834297 Tether ("USDT"),<br><br>　　　　　　Defendant *In Rem*. | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

Plaintiff United States of America brings this complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules):

## NATURE OF THE ACTION

1. This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of virtual currency, which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), including but not limited to wire fraud, 18 U.S.C. § 1343, or a conspiracy to commit such offense.

2. This is a civil action *in rem*, brought to enforce the provision of 18 U.S.C. § 981(a)(1)(A) for the forfeiture of virtual currency, which is involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957.

//

3. Venue and jurisdiction in Arizona are based upon 21 U.S.C. § 881(j), and 28 U.S.C. §§ 1355(b) and 1395 as acts and omissions occurred in the District of Arizona that give rise to this forfeiture action. This Court has jurisdiction. 28 U.S.C. §§ 1345 and 1355, and 18 U.S.C. § 981(h).

## THE DEFENDANTS *IN REM*

4. The defendant consists of virtual currency seized from a Binance account via a federal seizure warrant (hereafter the "defendant property"). The defendant property is currently in the custody of the Federal Bureau of Investigation ("FBI").

5. The defendant property, consisting of 212883.834297 Tether ("USDT"), was seized from Binance account, user ID xxxxx9553 (the "Binance Account") held in the name of Liang Jiner ("Jiner").

## BACKGROUND ON VIRTUAL CURRENCY

6. **Virtual Currency:** Virtual currencies are digital tokens of value circulated over the Internet as substitutes for traditional fiat currency. Virtual currencies are not issued by any government or bank, like traditional fiat currencies such as the U.S. dollar, but are generated and controlled through computer software. As discussed herein, cryptocurrency is a form of virtual currency. Bitcoin ("BTC") is a well-known type of cryptocurrency.

7. **Virtual Currency Addresses:** Virtual currency addresses are the particular virtual locations to which such currencies are sent and received. A virtual currency address is analogous to a bank account number and is represented as a string of alphanumeric characters.

8. **Virtual Currency Wallet**: There are various types of virtual currency wallets, including software wallets, hardware wallets, paper wallets. The virtual currency wallets at issue for the purposes of this affidavit are software wallets (*i.e.,* a software application that interfaces with the virtual currency's specific blockchain and generates and stores a user's addresses and private keys). A virtual currency wallet allows users to store, send, and receive virtual currencies. A virtual currency wallet can hold many virtual currency addresses at the same time.

9. **Virtual Currency Exchanges (VCEs)**: VCEs are trading and/or storage platforms for virtual currencies. Many VCEs also store their customers' virtual currency in virtual currency wallets. Because VCEs act as money services businesses, they are legally required to conduct due diligence of their customers (*i.e.*, "know your customer" or "KYC" checks) and to have anti-money laundering programs in place.

10. **Blockchain:** Many virtual currencies publicly record their transactions on what is referred to as the "blockchain." The blockchain is essentially a distributed public ledger, run by a decentralized network, containing an immutable and historical record of every transaction that has ever occurred utilizing that blockchain's specific technology. The blockchain can be updated multiple times per hour and record every virtual currency address that ever received that virtual currency. It also maintains records of every transaction and all the known balances for each virtual currency address. There are different blockchains for different types of virtual currencies. Investigators can follow or "trace" funds on public blockchains, a practice known as "blockchain analysis."

11. **Blockchain Analysis:** It is virtually impossible to look at a single transaction on a blockchain and immediately ascertain the identity of the individual behind the transaction. That is because blockchain data generally consist only of alphanumeric strings and timestamps. But law enforcement can obtain leads regarding the identity of the owner of an address by analyzing blockchain data to figure out whether that same individual is connected to other relevant addresses on the blockchain. To analyze blockchain data, law enforcement can use blockchain explorers as well as commercial services offered by blockchain-analysis companies. These companies analyze virtual currency blockchains and attempt to identify the individuals or groups involved in transactions. Through numerous unrelated investigations, law enforcement has found the information provided by these tools to be reliable.

12. **Stablecoins:** Stablecoins are a type of virtual currency pegged to a commodity's price, such as gold, or to a fiat currency, such as the U.S. dollar. USDT and USDC (the ticker symbol for "USD Coin") are cryptocurrencies that reside on multiple

blockchains. The value of USDT and USDC is tied to the value of the U.S. dollar; therefore, one unit of USDT and USDC is equivalent to approximately one U.S. dollar, making them what are known as a "stablecoins."

## INTRODUCTION

13. The purpose of this forfeiture action *in rem* is to establish the government's clear title to the defendant property. The defendant property was swindled from victims, including a victim in the District of Arizona, through the course of an investment fraud scam. Following the government's seizure of the defendant property, the government now seeks to clear title so that, subject to the Attorney General's authority under 18 U.S.C. § 981(d) to dispose of petitions for remission of forfeited property, the defendant property may be returned to the victims of the fraud described herein.

14. The cryptocurrency seized in this matter is derived from an investment fraud scam, commonly referred to as "pig butchering," perpetrated on victims throughout the United States, including in the District of Arizona.[1] The scheme often begins when a scammer sends a victim a seemingly innocuous and misdialed text or WhatsApp message. From there, the scammer will attempt to establish a more personal relationship with the victim by using manipulative tactics similar to those used in online romance scams.

15. The victims in pig butchering schemes are referred to as "pigs" by the scammers because the scammers will use elaborate storylines to "fatten up" victims into believing they are in a romantic or otherwise close personal relationship. Once the victim places enough trust in the scammer, the scammer brings the victim into a cryptocurrency investment scheme. The investment schemes are fake but have the appearance of a legitimate enterprise through the use of fabricated interfaces, derivative or "spoofed" websites that appear related to legitimate companies, and other techniques designed to bolster the scheme's legitimacy. This generally includes a fake investment platform

---

[1] The term "pig butchering" is derived from the foreign-language phrase used to describe this scam, which originates from China and Southeast Asia. Based on Know Your Customer ("KYC") information provided to Binance, the Binance account was registered from the People's Republic of China, a country from which pig butchering schemes originate.

4

operated through a website or mobile application that displays a fictitious investment portfolio with abnormally large investment returns.

16. Rarely, if ever, are the investment platforms anything more than a ruse, and the funds contributed are routed directly to a cryptocurrency address the scammers control. When the victims eventually attempt to withdraw their funds, they are unable to do so and are often met with various excuses or even required to pay "taxes" in order to release their funds. Eventually, most victims are completely locked out of their accounts and lose all of their funds.

17. FBI Special Agent John L. Pollard (hereafter "Agent") identified at least two victims related to the defendant property. The defendant property has a value of approximately $213,000 in U.S. dollars.

## BACKGROUND

### *Victim I.H.*

18. On June 9, 2023, the Agent conducted an interview with victim I.H.

19. Arizona resident and victim I.H. said he was contacted through WhatsApp in October of 2022 by a person who called herself "Emily."

20. Emily sent this picture of herself to I.H.:



//

21. Emily told I.H. that she had mistakenly contacted him, but their communications continued through WhatsApp and Telegram, both of which are encrypted instant messaging services.

22. Emily said that she owned a fabric company in New York, and later told I.H. that she was making large amounts of money trading in virtual currency. While Emily did not ask for money directly from I.H., she told him about a platform called "Bingxd" that she was using and offered to share virtual currency trading advice with I.H.

23. I.H. followed the instructions provided by Emily to initiate what I.H. thought was a legitimate investment. At Emily's direction, I.H. opened a Crypto.com account and transferred virtual currency to a wallet address provided by Emily.

24. Based on what he saw on Bingxd, a fraudulent platform with a fake website and mobile application., I.H. believed he was receiving a significant return on his investment. The fraudulent platform showed that I.H.'s account had a balance of over $2.3 million after a short time.

25. I.H. continued to convert money into virtual currency and send even more funds to Emily's wallet address for investment. In total, I.H. converted and transferred to Emily approximately $730,000 into virtual currency. The $730,000 was sourced from combination of I.H.'s retirement savings, his wife's retirement savings, and a $200,000 loan.

26. I.H. eventually attempted to withdraw his money from the fictitious account Emily helped him set up. The transaction was rejected, and a message from Bingxd told I.H. that the only way he could withdraw his funds was to pay an additional fee of $230,000.

27. In December of 2022, Emily reached out to I.H. again and stated she would help him get his money back. Emily asked for $30,000 and said she would pay the other $200,000 needed. I.H. transferred the $30,000, and Emily ceased contact.

28. In March of 2023, Emily once again reached out and asked I.H. for his Telegram user ID and password. Emily offered to give I.H. his money back if he allowed

1  her to use his Telegram account. I.H. refused and Emily stopped contact again. Eventually,
2  after repeated efforts by I.H. to reach out to Emily, she brazenly admitted to defrauding
3  I.H. of his $730,000. Emily said, among other things, "I'm glad you were cheated out of
4  everything," "you spend the rest of your life paying off debts," and that "the police won't
5  arrest me."

### Victim D.S.

29. On June 13, 2023, the Agent conducted an interview with victim D.S.

30. D.S, a 76-year-old New York resident, was contacted online in May of 2023 by a person who called herself "Eiko." D.S. couldn't remember whether Eiko contacted him on Facebook or Instagram.

31. Eiko sent this picture of herself to D.S.:



32. Eiko claimed to be the owner of a cosmetics company in New York, and told D.S. that she wanted to help him improve his financial situation.

33. Eiko offered D.S. an opportunity to invest in virtual currency. Eiko offered to share trading advice from her grandmother with D.S. Eiko directed D.S. to a fraudulent investment platform called Bitbank Global.

//
//

34. Eventually, Eiko convinced D.S. to open a Coinbase account and fund it with a wire transfer from his bank. Eiko convinced D.S. to convert $130,000 of his funds into USDT and send it to an address provided by Eiko for investment.

35. Shortly after D.S. transferred the USDT to Eiko, the Bitbank Global fraudulent platform showed that his account balance had grown to approximately $299,000.

36. Coinbase warned D.S. that the wallet address he sent money to was considered fraudulent. Coinbase then froze the account but allowed D.S. to liquidate the approximately $20,000 remaining in his Coinbase account.

37. Eiko continued to reach out to D.S. to solicit more funds, but D.S. refused. D.S. then cooperated with law enforcement in an attempt to retrieve his funds from the fraudulent platform.

## FURTHER INVESTIGATION

38. A FBI Forensic Accountant traced cryptocurrency transactions from I.H. to the wallet address Emily provided and from D.S. to the wallet address that Eiko provided. Once in Emily's and Eiko's wallets, I.H.'s and D.S.'s stolen funds were rapidly transferred into and out of other intermediary wallet addresses, where they were commingled with other funds, before a portion of the funds arrived at the Binance Account.

39. A forensic analysis of this Binance Account revealed a clear pattern of rapid money movement over the history of this Binance Account. Funds rarely remained in this Binance Account for more than a few minutes before being passed through to another account, effectively zeroing out the balance on a recurring basis.

## SEIZURE

40. On June 16, 2023, based upon the interviews of the victims and the tracing of a portion of the victims' stolen funds to the Binance Account, the FBI obtained and executed a federal seizure warrant on Binance that resulted in the seizure of the defendant property. No one has been arrested or indicted at this point. According to the Agent, it is difficult to prosecute criminals involved in such schemes as they are typically physically located outside the United States.

41. I.H. and D.S are the only two victims directly related to the Binance Account that have been identified at this time by law enforcement.

## ADMINISTRATIVE CLAIM BY JINER

42. The FBI initiated administrative forfeiture of the defendant property on June 16, 2023.

43. On August 15, 2023, the FBI received an administrative claim from an individual purporting to be Jiner, the Binance Account holder. The claim stated:

> Petition
>
> Dear Officer,
>
> Hello, first of all, thank you for reading my letter. If you have any trouble, please forgive me.
>
> My name is Liang Jiner. I am a Chinese. This is a petition for my own request for amnesty or relief. I submit the application in writing. I swear that all the evidence provided is true. The following is a description of my rights and interests of the property, with documents and reasons explaining my ownership of the property and request for release due to difficulties. The details of the return of the property are as follows:
>
> 1. The following is the receipt record of my assets of 212766 USDT in Bitcoin cold wallet:
>
> 2. The following is the recharge record of my assets of 212766 USDT transferred from Bitcoin cold wallet to Binance Exchange:
>
> 3. The following is the proof of the source of income and expenditure of my bank card for the purchase of USDT legal cash:
>
> 4. The following is my daily proof of legal transactions on the Binance Exchange platform:
>
> I make a claim against the seized assets and object to the confiscation:
>
> Applicant: Liang Jiner, Binance account number is 495919553, asset ID number: 23-FBI-005093, notification letter ID: 469592. My email address is a19306863693@qq.com. On June 9, 2023, in the enforcement, my assets of 212,766 USDT worth 1.5 million yuan were frozen on the Binance Stock Exchange. After seizure, I received a notice on August 10, 2023 and was confiscated and transferred.
>
> The USDT property I bought in formal and legal cash was suddenly frozen overnight. I can't stand such a heavy fine. 1.5 million assets is an astronomical figure for our general family. We all save money and use house mortgages to make legal investments, and we have never had any illegal operations. In daily life, individuals withdraw legal cash from banks to buy USDT from guests to conduct legal transactions in the Binance Stock Exchange, earn a little difference to make a living. I can't know the source of

the currency. I also express my deep indignation and apologies for the cases that may be involved in this batch of currencies, but it cannot be forced. Let me bear this economic loss alone. This is unreasonable. This is a great blow to my family. I make a claim for the seized and allocated assets and object to the confiscation. I have repeatedly requested that the trial be fair and just, and the unfreeze and release of my legal property returned. I am willing to cooperate with the reasonable compensation. I kindly ask your department to handle my application in accordance with the
law. Thank you.

I swear that all the evidence provided above is true.

Applicant: Liang Jin'er

Date: August 14, 2023 (August 14th)

44.  On August 25, 2023, the FBI referred the case to the United States Attorney's Office for judicial forfeiture consideration.

## **SUMMARY**

45.  The defendant property was the proceeds of wire fraud, and/or was involved in money laundering, for the following reasons:

   a. The "pig butchering" fraud behavior described by victims I.H. and D.S. in which they were befriended then tricked into depositing large amounts of cryptocurrency into the addresses of swindlers Emily and Eiko;

   b. The romantic, or close, personal relationship, and financial interest, of young attractive strangers;

   c. The virtual and anonymous nature of the relationships between the victims and the fraudsters;

   d. I.H. and D.S. being locked out of their fictitious accounts when they later tried to withdraw funds;

   e. I.H. being encouraged to deposit more by Emily into the fraudster's addresses if he wanted to regain his earlier transferred funds;

   f. Emily's brazen admission to I.H. that she had defrauded him all along;

/ /

/ /

/ /

    g. The use of means of wire, radio, or television communication in interstate or foreign commerce, including WhatsApp, Facebook, and/or Instagram, to execute the fraudulent schemes that resulted in I.H. and D.S. losing their property;

    h. Cryptocurrency activity consistent with that of pig butchering and money laundering (extremely rapid movement of large cryptocurrency amounts into a wallet address that is immediately transferred to other wallet addresses); and

    i. Law enforcement tracing of I.H. and D.S.'s stolen funds to the defendant property.

## FIRST CLAIM FOR RELIEF

46. The United States realleges, adopts, and incorporates all allegations stated in paragraphs 1 to 45 as though fully set forth herein.

47. The defendant property constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity as defined in 18 U.S.C. § 1956 (c)(7), including wire fraud, 18 U.S.C. § 1343, or a conspiracy to commit such offense, and therefore is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF

48. United States realleges, adopts, and incorporates all allegations stated in paragraphs 1 to 45 as though fully set forth herein.

49. The defendant property was involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and/or 1957, and therefore is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that process issue for an arrest warrant *in rem* issue for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for

disposition according to law; and that the United States of America be granted such other and further relief as this Court deems just and proper, together with the costs and disbursements of this action.

      Respectfully submitted this 13th day of November, 2023.

                GARY M. RESTAINO
                United States Attorney
                District of Arizona

                *s/Joseph F. Bozdech*
                JOSEPH F. BOZDECH
                Assistant United States Attorneys